IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 18-CR-183-REB

**UNITED STATES OF AMERICA**,

       Plaintiff,

v.

**1. WILLIAM M. WHITTINGTON**,

       Defendant.

**GOVERNMENT'S SENTENCING MEMORANDUM**

This memorandum is submitted to summarize the terms of the binding plea agreement and to address the sentencing factors set forth in Title 18 U.S.C. Section 3553. For the reasons set forth below, the government's position is that a sentence of 18 months' imprisonment, one year of supervised release, and full payment of more than $1.8 million in restitution to the IRS on or before sentencing, will promote respect for the law, reflect the seriousness of the offense, afford adequate deterrence to criminal conduct, and will protect the public from further crimes of the defendant.

**SUMMARY OF TERMS OF BINDING PLEA AGREEMENT**

On May 2, 2018, defendant William M. Whittington pleaded guilty to Count 1 of the Information charging him with filing a false 2010 individual income tax return, in violation of 26 U.S.C. Section 7206(1). The parties agreed on the sentence defendant would serve as set forth in the binding plea agreement, submitted to the Court pursuant to Fed. R. Crim. P. 11(c)(1)(C): 18 months in prison, followed by one year of supervised release, and payment of $1,804,865 in restitution to the IRS. In exchange for the

defendant's guilty plea and agreed sentence, the United States agreed not to initiate or prosecute any additional criminal charges against the defendant or his family members Nerissa Whittington, Keely Whittington and Patricia Whittington, based on conduct known to the government. The United States also agreed not to pursue forfeiture of The Springs Resort & Spa (hereafter Springs Resort) in Pagosa Springs, Colorado, owned and controlled by the Whittington family. Doc. 8.

## **UNITED STATES SENTENCING GUIDELINES COMPUTATION**

The government has no objection to the United States Sentencing Guidelines (hereafter "Guidelines" or "U.S.S.G.") Calculation in the Presentence Report (PSR) filed on September 4, 2018, which is summarized below. Doc. 17.

| | | | |
|---|---|---|---|
| Base Offense Level: | | 22 | U.S.S.G. §§2T1.1(a)(1); 2T4.1(I) |
| Use of Sophisticated Means: | | +2 | U.S.S.G. §2T1.1(b)(2) |
| Acceptance of Responsibility: | | -3 | U.S.S.G. §3E1 |
| Total Offense Level: | | 21 | |

The Total Offense Level of 21, with a Criminal History Category of II, results in a Guidelines range of 41-51 months. The probation officer recommended a sentence of 18 months, consistent with the terms of the binding plea agreement. An enhancement for sophisticated means pursuant to § 2T1.1(b)(2) is applicable based on the use of fictitious intercompany loans, the use of sham/nominee/alter ego entities, the use of

vague and non-descriptive accounting entries, the use of fictitious invoices, fictitious contracts and backdated loan documents.[1]

## APPLICABLE LAW

"In sentencing defendants, district courts exercise a guided discretion within a range specified by Congress. As Justice Cardozo wrote, a 'judge . . . is to exercise a discretion informed by tradition, methodized by analogy, disciplined by system, and subordinated to the primordial necessity of order in the social life.'" *United States v. Smart*, 518 F.3d 800, 809 (10th Cir. 2008) (citation omitted).

In considering what sentence to be imposed in any given case, the Court must consider the factors listed in 18 U.S.C. § 3553(a). One of those factors is "the kinds of sentence and sentencing range established for the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines," which are promulgated by the Sentencing Commission. 18 U.S.C. § 3553(a)(4)(A). Although the Sentencing Guidelines have been rendered advisory, according to the Supreme Court in *Gall*:

> [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range. . . . As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark. The Guidelines are not the only consideration, however. Accordingly, after giving both parties an opportunity to argue for whatever sentence they deem appropriate, the district court should then consider all of the § 3553(a) factors to determine whether they support the sentence requested by a party. In so doing, he may not presume that the Guidelines range is reasonable. . . . He must make an individualized assessment based on the facts presented. If he decides that an outside-Guidelines sentence is warranted, he must consider the extent of the deviation and ensure that the justification is sufficiently compelling to support the degree of the variance. We find it

---

[1] See detailed discussion on page 5, *infra*.

uncontroversial that a major departure should be supported by a more significant justification than a minor one. After settling on the appropriate sentence, he must adequately explain the chosen sentence to allow for meaningful appellate review and to promote the perception of fair sentencing.

*Gall v. United States*, 552 U.S. 38, 49-50 (2007) (citations omitted). "[I]n the ordinary case, the Commission's recommendation of a sentencing range will 'reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.'" *Kimbrough v. United States*, 552 U.S. 85, 109 (2007) (quoting *Rita v. United States*, 551 U.S. 338, 350 (2007)). "The sentencing judge, on the other hand, has 'greater familiarity with . . . the individual case and the individual defendant before him than the Commission or the appeals court.'" *Id.* at 109 (*quoting Rita*, 551 U.S. at 357-58).

## **ARGUMENT**

Based on the facts and circumstances of this case, and based on the characteristics of this individual defendant, an 18-month prison sentence will satisfy the mandate of section 3553(a) that the sentence "reflect the seriousness of the offense," "promote respect for the law," "provide just punishment for the offense," "afford adequate deterrence to criminal conduct," "protect the public from further crimes of the defendant," and "avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a).

For the past decade, the Whittington family had three principal sources of revenue: 1) commercial real estate in Albuquerque, New Mexico; 2) Big Byte, a commercial computer server "farm" in Albuquerque, New Mexico; and 3) The Springs Resort & Spa (hereafter Springs Resort), in Pagosa Springs, Colorado. Defendant

primarily managed the Springs Resort during the calendar years under investigation, 2010 through 2012.

As set forth in the Stipulation of Facts in the Plea Agreement, the defendant had two principal sources of unreported individual income. First, approximately $9.7 million in income was generated by funds on deposit in two Liechtenstein bank accounts in the name of Taok Foundation and Nee Foundation. Defendant caused those bank accounts to be opened in or around 1990. The funds in Liechtenstein were repatriated to the United States in 2011 based on defendant's participation in the IRS's Offshore Voluntary Disclosure Program (OVDP). Doc. 8 at ¶ 14b-c. Second, defendant caused money collected by the Springs Resort to be used to pay defendant's personal expenses, resulting in unreported income of $392,934 for 2010, $391,069 for 2011, and $304,768 for 2012. Doc. 8 at ¶ 14e. The total unreported income for all three years, based on the payment of defendant's personal expenses by the Springs Resort, was just over $1 million.

The payment of personal expenses for defendant's benefit was concealed in the accounting records for the Springs Resort by three principal methods: 1) the use of fictitious intercompany loans; 2) the use of sham/nominee/alter ego entities; and 3) the use of vague and non-descriptive accounting entries. The tax fraud scheme was also supported with fictitious invoices, fictitious contracts and backdated loan documents. At the end of each year, defendant, assisted by his in-house CPA, would transfer income and/or expenses between businesses through journal entries. These entries in the accounting records had no business purpose or economic reality, but instead were designed to reduce or eliminate income for the Springs Resort and other businesses.

The tax fraud scheme caused losses to be reported on the tax returns of the Springs Resort and other Whittington family businesses. Since the income was taxed at the shareholder or partner level on individual income tax returns, at trial the government would need to prove the claimed loss for each business for each year was fraudulent to prove that defendant had unreported individual income and owed additional income tax for each year. Additionally, trust agreements and stock purchase agreements existed between Whittington family members. These potentially complicated accounting concepts may have confused the jury, especially in a trial that would have lasted several weeks.

In this case, as with most criminal tax cases, a primary goal of sentencing is to provide deterrence, in order that others are less likely to commit tax crimes. In *United States v. Engle*, 592 F.3d 495, 505 (4th Cir. 2010), the Fourth Circuit vacated a probationary sentence in a tax case and remanded, based in part on the trial court's failure to consider the relevant policy statements and found that "the district court committed significant procedural error by minimizing the seriousness of [defendant's] conduct . . . ." The Court pointed to particular policy statements made by the Sentencing Commission and noted that "[t]he policy statements . . . reflect the Commission's view that general deterrence – that is, deterring those other than the defendant from committing the crime – should be a primary consideration when sentencing in tax cases." *Id.* at 501.

> The criminal tax laws are designed to protect the public interest in preserving the integrity of the nation's tax system. Criminal tax prosecutions serve to punish the violator and promote respect for the tax laws. Because of the limited number of criminal tax prosecutions relative to the estimated incidence of such violations, deterring others from violating the tax laws is a primary consideration underlying these

6

> guidelines. Recognition that the sentence for a criminal tax case will be commensurate with the gravity of the offense should act as a deterrent to would-be violators.

*Id.* at 501-502 (quoting U.S.S.G. Ch. 2, Pt. T, introductory cmt. (1998)). "The policy statements likewise make it clear that the Commission believes that there must be a real risk of actual incarceration for the Guidelines to have a significant deterrent effect in tax evasion cases." *Engle*, 592 F.3d at 502. In this case, defendant lived a lavish lifestyle funded by tax fraud. A prison term of 18 months for a 68-year-old man will provide general deterrence to other individuals who run their own businesses and may consider not reporting all of their income.

## **Restitution**

The Court has the authority to order restitution as a special condition of supervised release. When there is an identifiable victim, the Guidelines state the court shall "impose a term of probation or supervised release with a condition requiring restitution for the full amount of the victim's loss, if the offense is not an offense for which restitution is authorized under 18 U.S.C. § 3663(a)(1) but otherwise meets the criteria for an order of restitution under that section." U.S.S.G. § 5E1.1(a)(2). Generally, the amount of restitution is limited to losses caused by the specific conduct underlying the offense of conviction. A recent Ninth Circuit case involving criminal tax charges, *United States v. Baston*, 608 F.3d 630 (9th Cir. 2010), held that Title 18 U.S.C. §3583(d) grants federal courts broad discretion to order restitution as a condition of supervised release for any criminal offense.

The law also allows the government to continue collection of the restitution after the period of supervised release expires. Under 18 U.S.C. §3664(m)(1)(A), "[a]n order

of restitution may be enforced by the United States in the manner provided for in subchapter C of chapter 227 and subchapter B of chapter 229 of this title; or by all other available and reasonable means." *See United States v. Young*, 593 F.3d 773, 774 (8th Cir. 2010) (garnishment after term of supervised release was appropriate because the obligation to pay restitution did not terminate when supervised release ended).

Defendant has agreed to pay restitution to the IRS in the amount of $1,804,865 on or before his sentencing hearing. This amount constitutes income tax due for tax years 2010, 2011 and 2012 as stipulated by the parties. Doc. 18.

| Tax Year | Tax Loss |
|---|---|
| 2010 | $137,640 |
| 2011 | $1,562,775 |
| 2012 | $104,450 |
| **Total:** | **$1,804,865** |

To assist the clerk of courts in processing restitution payments, the government requests the Court include the IRS's centralized location for collection of restitution payments in the judgment:

IRS - RACS
Mail Stop 6261, Restitution
333 W. Pershing Ave.
Kansas City, MO 64108

**Fine**

For Count 1 the maximum fine is $250,000. 18 U.S.C. 3571(b). The Court is directed to consider various factors in determining whether to impose a fine per 18 U.S.C. § 3572(a). Since the defendant agreed to pay full restitution to the IRS of $1,804,865 on or before sentencing, saving the government the time and effort of collecting those funds over several years, the parties agreed to recommend no fine.

## **Costs of Prosecution**

26 U.S.C. Section 7206(1) provides for costs of prosecution as punishment for the crime. Generally, those are costs directly related to the preparation and trial of the case. Since defendant pleaded guilty prior to indictment, there are no costs of prosecution.

## **CONCLUSION**

For the reasons set forth above, the United States respectfully requests that this Court accept the terms of the binding plea agreement and impose a sentence of 18 months in prison, one year of supervised release, and payment of restitution of $1,804,865 to the IRS.

DATED this 25 day of September, 2018.

Respectfully submitted,

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General
Department of Justice, Tax Division

s/Lori A. Hendrickson
**LORI A. HENDRICKSON**
KATHLEEN M. BARRY
SARAH A. KIEWLICZ
Trial Attorneys
Tax Division, Criminal Enforcement
601 D St NW
Washington, DC 20004
Telephone: (202) 353-0542
Fax: (202) 514-9623
Email: Lori.A.Hendrickson@usdoj.gov
         Kathleen.M.Barry@usdoj.gov
         Sarah.A.Kiewlicz@usdoj.gov
Attorneys for the United States

**CERTIFICATE OF SERVICE**

I hereby certify that on September 25, 2018, a true and correct copy of the foregoing was served electronically on the following:

All Counsel of Record

s/Lori A. Hendrickson
Department of Justice, Tax Division