**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Durango Division**

Criminal Case No. 1:18-CR-00183

UNITED STATES OF AMERICA,

       Plaintiff,

v.

WILLIAM WHITTINGTON,

       Defendant.

---

### OBJECTIONS AND CLARIFICATIONS TO PRESENTENCE REPORT

---

      William Whittington, by counsel Jay Nanavati, respectfully submits his objections and clarifications to the Presentence Report.

**Page 5, Paragraph 15**

The Drug Enforcement Administration closed its investigation without charges. Mr. Whittington disputes that he played as extensive a role in the operations of the Pagosa Springs Resort and Spa as depicted in the PSR. Mr. Whittington's role was more akin to that of a business consultant to his daughters.

**Page 5, Paragraph 16**

It is not at all unusual to use separate entities for each sub-unit of a business organization. In fact, it is considered best practice in the business world. Owners of real estate, for example, typically form a new entity for each property that they own. If one property becomes the subject of legal action, the others remain separate from the lawsuit. Additionally, the eventual sale of businesses is far easier when they are separate legal

entities. When several businesses are under one entity, it can be a complex task to segregate operations, assets, and documentation, thereby making the sale more difficult.

**Page 5, Paragraph 17**

In addition to the payments of $1,253,464 and $2,690,241, Mr. Whittington paid the IRS another $412,376 through the Offshore Voluntary Disclosure Program, because the IRS calculated passive foreign investment company income on the bank accounts. Thus, Mr. Whittington paid the IRS a combined $4,356,081.

**Page 6, Paragraph 20**

While the government believes that the intercompany loans at issue were fictitious, the reality was far different. In fact, the loans were all real loans that had a non-tax business purpose and economic substance.

In small, closely-held businesses, related companies routinely lend money to each other and to shareholders and record the loans in the companies' books and records without the creation of formal promissory notes for each transaction and without the need to "protect" one related entity from another through collateral. Such informality is the result of the close relationships among the parties and is not indicative of any intent to conceal or defraud.

In fact, less formal loans, without stated duration or interest, are at least as common as more formal intercompany and shareholder loans. These informal loans are treated as "demand" loans under the law because they are payable in full on the demand of the lender. These loans were real and were not part of any tax fraud.

**Page 9, Paragraphs 42-43**

Mr. Whittington's Criminal History Category would be I, and the Guidelines sentence would be 37-46 months, but for the fact that only 13 years, and not 15 years or more, separated Mr. Whittington's release from prison and the current offense conduct.

**Page 13, Paragraph 73**

Mr. Whittington has never owned a Bentley automobile. The only possible explanation for this is that his nephew, R.D. William Whittington, owns a business that buys and sells luxury automobiles. This could be the source of the confusion.

The 1983 UCC lien to which the PSR refers was released by court order.

**Addendum, Page R-1, Amended Sentencing Recommendation**

Mr. Whittington objects to the recommended fine of $60,000 in light of the parties' agreement that no fine is appropriate in light of the large restitution amount.

**Pages R-2 and R-3, Special Conditions**

Mr. Whittington submits that the recommended special conditions of supervision are inappropriate because they are primarily directed toward ensuring that the defendant makes restitution payments after sentencing. Mr. Whittington will have paid all of his restitution before sentencing, as is required by the plea agreement. There is therefore no reason for the Probation Office to monitor his ability to pay and his progress toward paying restitution. Additionally, Mr. Whittington has been a resident of Arizona for approximately four years. It is therefore unnecessary to monitor his compliance with the rules of the Colorado Department of Revenue.

Dated: October 1, 2018                    Respectfully submitted,

                                          s/ Jay Nanavati
                                          Jay R. Nanavati
                                          Kostelanetz & Fink LLP

601 New Jersey Avenue NW  
Suite 620  
Washington, DC 20001  
(202) 875-8000 (T)  
(202) 844-3500 (F)  
jnanavati@kflaw.com  

*Attorney for Defendant William Whittington*